UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTO ENRIQUE INGA on behalf of himself and
others similarly situated,

                        Plaintiff,

        -v-

NESAMA FOOD CORP. d/b/a BIG ARC CHICKEN,
MOHAMMED EL HATTAB, and ABDELLATIF
MAHMOUD,

                      Defendants.

CIVIL ACTION NO.: 20 Civ. 0909 (ALC) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE ANDREW L. CARTER**, United States District Judge:

## I. INTRODUCTION

Plaintiff Justo Enrique Inga ("Inga") filed this action under the Fair Labor Standards Act

(the "FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor Law ("NYLL") §§ 190 et seq., and New

York's Wage Theft Prevention Act, NYLL § 195 ("WTPA"), seeking recovery of minimum and

overtime wages and related relief from Defendants Nesama Food Corp. d/b/a Big Arc Chicken

("Nesama"), Mohammed El Hattab ("El Hattab"), and Abdellatif Mahmoud ("Mahmoud,"

together with Nesama and El Hattab, "Defendants").  (ECF No. 1).  Inga alleges that during his

nine-year employment at Defendants' restaurant, Defendants failed to pay him the proper

minimum wage and overtime premiums, and failed to provide him with wage statements as

required by state law.  (ECF No. 1 ¶¶ 1–2, 18–40).  In addition, Inga seeks pre- and post-judgment

interest, attorneys' fees, and costs.  (Id. ¶ 2).

Defendants initially appeared and defended against this action, until the Court granted their counsel's motion to withdraw and ordered new counsel to appear.  (ECF Nos. 10, 11, 14, 15, 31).  After multiple reminders and warnings, no new counsel appeared, and Inga moved to strike Defendants' answer, for entry of a default judgment against Defendants, and for an award of attorneys' fees and costs.  (ECF No. 37 (the "Motion")).  The Honorable Andrew L. Carter referred the Motion to me for a Report and Recommendation.   (ECF No. 43).

For the reasons set forth below, I respectfully recommend that the Motion be GRANTED, Defendants' Answer be stricken, Certificates of Default and a default judgment be entered against Defendants, and Inga be awarded attorneys' fees and costs.

## II. BACKGROUND

### A. Factual Background

The following factual summary is taken from the uncontested allegations in Inga's Complaint, which the Court deems to be true for purposes of the Motion.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in complaint admitted on motion for default judgment); Arch Ins. Co. v. Sky Materials Corp., No. 17 Civ. 2829 (CBA) (LB), 2021 WL 966110, at *1 n.1, *6 (E.D.N.Y. Jan. 29, 2021) (same).

Nesama owns and operates a restaurant called "Big Arc Chicken," on First Avenue in New York City (the "Restaurant").  (ECF No. 1 ¶ 7).  El Hattab and Mahmoud are joint owners of Nesama and participate in the day-to-day operation of the Restaurant.  (Id. ¶¶ 8, 18, 19).  Nesama is engaged in interstate commerce and has an annual gross volume of sales of not less than $500,000.  (Id. ¶ 11).

2

From 2009 until November 1, 2018, Inga worked for Defendants as a cook and porter. (ECF No. 1 ¶¶ 12, 20–21).  Throughout his employment, Inga worked ten hours per day, six days per week, but did not punch a time-clock or other time-recording device at the beginning or ending of his shift.  (Id. ¶¶ 22–25).  His shift occasionally exceeded ten hours in a single day.  (Id. ¶ 24).  From February 2014 (the beginning of the six-year limitations period) until August 2018, Inga was paid $450 per week in cash for all the hours he worked.  (Id. ¶ 26).  From September 2018 until November 2018, Inga was paid $500 per week in cash for all the hours he worked.  (Id. ¶ 27).

Throughout his employment, Defendants did not provide Inga with any weekly wage statements.  (ECF Nos. 1 ¶ 28; 47 ¶¶ 6, 14).

B.  **Procedural History**

On February 3, 2020, Inga filed his Complaint.  (ECF No. 1).  On February 12, 2020, Inga served Defendants with the Summons and Complaint.  (ECF Nos. 5–8).  On March 4, 2020, Joey Tsai, Esq. ("Tsai") appeared on behalf of Defendants.  (ECF No. 10).  On April 17, 2020, Defendants filed their Answer.  (ECF No. 15).  Following a conference on May 27, 2020, the Court set a fact discovery deadline of March 1, 2021, and scheduled a settlement conference for July 22, 2020, which was later rescheduled to March 2, 2021 and then adjourned sine die.  (ECF Nos. 19–22, 42).  Because this is an FLSA action, the parties were referred to the Court's Mediation Program (ECF No. 13), but no mediation was held after Tsai indicated that Defendants did not wish to engage in settlement discussions.  (ECF Nos. 23; 38 ¶ 13).

After Tsai informed Inga's counsel on September 4, 2020 that he intended to withdraw from representing Defendants, Inga's counsel requested a conference with the Court.  (ECF

Nos. 24, 38 ¶ 14).  On September 25, 2020, Tsai filed a motion to withdraw (the "Motion to Withdraw"), accompanied by an affirmation from Mahmoud stating that he intended to proceed pro se.  (ECF Nos. 27–29).  On October 6, 2020, the Court held a conference with the parties' counsel to discuss the Motion to Withdraw.  (ECF No. 30).  The Court granted the Motion to Withdraw, ordering, by November 5, 2020, counsel for Nesama to file a notice of appearance, and El Hattab and Mahmoud to notify the Court whether new counsel would appear on their behalf or whether they would proceed pro se.  (ECF No. 31 (the "Withdrawal Order")).  During the conference, the Court ordered Tsai to serve a copy of the Withdrawal Order on Defendants and to inform them of the possible consequences of the failure to respond.  (ECF No. 38 ¶ 17).  Tsai filed a Declaration attesting that he served the Withdrawal Order on Defendants.  (ECF No. 46).

On November 6, 2020, after Defendants had failed to respond to the Withdrawal Order, the Court "extend[ed] for a final time" until November 19, 2020 the time for new counsel to appear for Nesama, and for El Hattab and Mahmoud to inform the Court of their intentions.  (ECF No. 32 (the "Final Extension Order")).  Defendants did not respond to the Final Extension Order, and on November 24, 2020, the Court ordered Inga to commence default proceedings in accordance with Judge Carter's Individual Practices.  (ECF No. 33).

On January 7, 2021, Inga filed the Motion, in which he asks the Court to strike Defendants' Answer, enter default judgment in his favor, and award him attorneys' fees and costs.  (ECF Nos. 37–39).  Inga also filed a Damages Summary (ECF No. 38-4), and proof of service of the Motion on Defendants.  (ECF No. 40).  On May 21, 2021, Judge Carter referred the Motion for a Report and Recommendation.  (ECF No. 43).  Since Mahmoud filed his affirmation with the

Motion on September 25, 2020, no Defendant has filed any document or otherwise contacted the Court in any way.

On July 12, 2021, the Court notified Inga that he had failed to file an affidavit attesting to his allegations and damages, and, accordingly, granted him a brief additional period to do so. (ECF No. 45). The Court also granted Defendants one final opportunity to respond to the Motion, or contact the Court, and warned them that if they failed to do so, the Court would conduct the inquest on damages based on Inga's written submissions alone, without an in-person hearing. (Id.) On July 19, 2021, Inga submitted his Affidavit, which corroborates the allegations in his Complaint. (ECF No. 47). Defendants did not respond to Inga's Affidavit or otherwise contact the Court.

### III. LEGAL STANDARDS

#### A. Motion to Strike

Federal Rule of Civil Procedure 16(f), permits a district court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii) – (vii), if a party or its attorney . . . fails to obey a scheduling order or other pretrial order." Fed. R. Civ. P. 16(f). The orders authorized by Rule 37(b)(2)(A)(ii) – (vii) include those "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), (vi). "The Court may enter a default judgment when the disobedient party has failed to comply with a court order due to willfulness, bad faith, or any fault, including gross negligence." Arch Ins. Co., 2021 WL 966110, at *3. In addition, "'[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's

5

default.'"  Bratta v. Tramp, No. 08 Civ. 4073 (JFB) (ETB), 2009 WL 10708936, at *2 (E.D.N.Y. Nov. 30, 2009) (quoting Fed. R. Civ. P. 55(a)).

In determining whether to impose these sanctions, courts consider "(1) the party's history of noncompliance; (2) the effectiveness of lesser sanctions; (3) whether a warning has been issued regarding imposition of sanctions; and (4) whether imposing lesser sanctions would prejudice the moving party."  Arch Ins. Co., 2021 WL 966110, at *3.  Sanctions are considered "a harsh remedy to be used only in extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault' by the non-compliant litigant."  Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (quoting Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990)).

A corporate defendant's failure to comply with a court order to retain counsel is an appropriate basis for striking that defendant's answer and entering default.  See Arch Ins. Co., 2021 WL 966110, at *3–4 (collecting cases in which courts struck defendants' answers for failure to comply with orders to retain and appear through counsel); Bratta, 2009 WL 10708936, at *2 (striking answer of and entering default against corporate defendant that failed to comply with two court orders to obtain counsel).  Similarly, the failure of a defendant—corporate or individual—to comply with a court's scheduling order and meaningfully participate in the defense of the action is also grounds for striking the answer and entering default against that defendant. See 2W Prod. Corp. v. Y & P Wholesale, Inc., No. 07-CV-0423 (ENV) (MDG), 2009 WL 29311, at *4–5 (E.D.N.Y. Jan. 5. 2009) (recommending that answer be stricken where defendants "failed to participate in a meaningful fashion" and failed to comply with three court orders); Bratta, 2009

6

WL 10708936, at *2–3 (striking answer of and entering default against individual defendant who failed to defend).

**B.  Default Judgment, Liability, and Damages**

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 185–86 (2d Cir. 2015).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. Mar. 19, 2015) (citing Enron Oil Corp., 10 F.3d at 96).

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants."  Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015).  The Court must determine "whether the allegations in the complaint establish the defendants' liability as a matter of law."  Id.  If the Court finds that the well-pleaded allegations

7

establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief[.]" Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the complaint fails to state a claim on which relief may be granted, the court may not award damages, "even if the post-default inquest submissions supply the missing information." Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019).

Once liability has been established, a court must "'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiffs submit must be admissible. Poulos v. City of New York, No. 14 Civ. 03023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) (explaining that "damages must be based on admissible evidence"). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the court need not conduct an evidentiary hearing. Fustock v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine, 109 F.3d at 111 (explaining that court may determine appropriate damages based on

affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

## IV. DISCUSSION

### A. Motion to Strike

Although Defendants filed an Answer to the Complaint, they have since failed to "'otherwise defend'" the action. Bratta, 2009 WL 10708936, at *2 (quoting Fed. R. Civ. P. 55(a)). Nesama is a corporation (ECF No. 15 at ¶ 6) and must appear and defend itself in this action through counsel. See Grace v. Bank Leumi Trust Co., 443 F.3d 180, 192 (2d Cir. 2006) ("[I]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55. . .") (internal citations omitted); Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991) ("[W]e have long required corporations to appear through a special agent, the licensed attorney."). The Court issued four orders directing Nesama to appear through counsel or contact the Court, and warned that the failure to do so may result in entry of default. (ECF Nos. 31, 32, 44, 45). Because Nesama has failed to obtain counsel despite multiple court orders directing it to do so and warning of the consequences of non-compliance, Nesama's Answer should be stricken and a Certificate of Default should be entered against it. See Glob. Auto, Inc., v. Hitrinov, No. 13-CV-2479 (SLT) (RER), 2015 WL 5793383, at *7 (E.D.N.Y. Sept. 30, 2015) ("Since a corporation's failure to retain counsel results in a failure to 'otherwise defend,' it is appropriate to enter a default against a corporation which has failed to comply with a court order to retain counsel."); Arch Ins. Co., 2021 WL 966110, at *4–5 (striking answer of and

ordering entry of default against defendant who failed to comply with orders to obtain new counsel to defend in the action); Bratta, 2009 WL 10708936, at *2 (same).

El Hattab and Mahmoud, as individuals, may proceed pro se.   Although he told the Court, in September 2020, that he would represent himself (ECF No. 29 ¶ 4), Mahmoud has failed to appear, submit any opposition, respond to any of the Court's orders warning of the consequences of not responding to the Motion, or otherwise contact the Court.  El Hattab did not submit any affirmation and has similarly failed to oppose the Motion or otherwise contact the Court.  Even though pro se litigants deserve "special solicitude," Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 475 (2d Cir. 2006), the failure of El Hattab and Mahmoud to defend themselves "is preventing this action from proceeding to resolution."  Bratta, 2009 WL 10708936, at *2.  Under these circumstances, "issuing further orders or imposing lesser sanctions would serve no purpose, and would prejudice" Inga by further delaying the resolution of this action.  Arch Ins. Co., 2021 WL 966110, at *4.  I therefore recommend that El Hattab's and Mahmoud's Answer also be stricken and Certificates of Default be entered against them.

**B.  Default Judgment**

"Although the Clerk's entry of [a certificate of] default under Rule 55(a) generally precedes a motion for a default judgment under Fed. R. Civ. P. 55(b), the '[r]igid adherence to these rules . . . must be balanced against the need for efficient administration of justice.'"  Arch Ins. Co., 2021 WL 966110, at *5 (quoting Hirsch v. Innovation Int'l, Inc., No. 91 Civ.4130 (MJL), 1992 WL 316143, at *1–2 (S.D.N.Y. Oct. 19, 1992) (internal citation omitted); see RLI Ins. Co. v. May Constr. Co., No. 09 Civ.7415 (PKC), 2011 WL 1197937, at *9 (S.D.N.Y. Mar. 22, 2011) ("[T]o

require the plaintiff to file for a certificate of default would only delay resolution of the motion and would not further safeguard the defendants' rights.").

Accordingly, the Court will consider the merits of Inga's request for a default judgment "in the interest of the efficient administration of justice." Arch Ins. Co., 2021 WL 966110, at *5. Here, Inga served the Motion on Defendants (ECF No. 40), and the Court has also issued four orders warning Defendants that the failure to respond or contact the Court could result in the entry of default.  (ECF Nos. 31, 32, 44, 45).  The Court therefore finds that Defendants have received "adequate notice of the consequences" of their failure to respond.  See Arch Ins. Co., 2021 WL 966110, at *5 (finding that plaintiffs' service of motion for default judgment gave defendants sufficient notice of risk of default); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc., 699 F.3d 230, 233 (2d Cir. 2012) (explaining that decision to grant motion for default judgment is within the "sound discretion of the District Court"); Enron Oil Corp., 10 F.3d at 95 (same).

The Second Circuit has stated a strong "preference for resolving disputes on the merits," and "general disfavor[]" of default judgments.  Arch Ins. Co., 2021 WL 966110, at *5 (quoting Enron Oil Corp., 10 F.3d at 95–96).  It therefore remains Inga's "burden to demonstrate that those uncontroverted allegations, without more, establish the defendant[s'] liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).  In determining whether to grant a default judgment, courts consider: "(1) whether defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the

denial of the motion for default judgment." Arch Ins. Co., 2021 WL 966110, at *5; see Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 171 (2d Cir. 2001) (setting out three factors).

Considering the first of these three factors, Defendants' failure to respond to multiple Court orders is willful. See Arch Ins. Co., 2021 WL 966110, at *6 (finding defendant's failure to respond to orders requiring appearance through counsel was willful); First Tech. Capital, Inc. v. Airborne, Inc., 378 F. Supp. 3d 212, 218 (W.D.N.Y. 2019) (finding defendant's failure to appear through counsel after being ordered to do so "sufficiently establish[ed] willfulness and favors granting" default judgment motion).

Second, as a result of Defendants' default, "the well-pleaded factual allegations set forth in [Inga's] [C]omplaint concerning liability are deemed true." Arch Ins. Co., 2021 WL 966110, at *6; see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendants'] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]"); Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (same). As set forth in § IV.C, infra, Inga's allegations establish Defendants' liability on his minimum wage, overtime, and statutory damages claims, but not on his spread-of-hours claim.

Third, the Court finds that Inga will be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants. See Arch Ins. Co., 2021 WL 966110, at *6 (finding that "plaintiffs will be prejudiced if they are not granted a default judgment because they have no other means of recovering the losses sustained as a result of" defendant's conduct); Chiquita Fresh N. Am., LLC v. Long Island Banana Corp., No. 14-CV-982

(ADS) (AKT), 2018 WL 1786991, at *9 (E.D.N.Y. Feb. 28, 2018) (finding that "[i]f a default judgment is not granted, Plaintiffs will have no alternative legal redress against [defendant] to recover the losses it has sustained"), adopted by, 293 F. Supp. 3d 305 (E.D.N.Y. 2018).

Accordingly, I respectfully recommend that default judgment be entered against Defendants.

C. **Liability**

1. **Jurisdiction and Venue**

As a threshold matter, the Court has subject matter jurisdiction over Inga's claims. He sues under a federal statute — the FLSA — that gives rise to subject matter jurisdiction under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction over his NYLL and WTPA claims because they arise out of the same facts and circumstances as the FLSA claims. See Perez, 2019 WL 7403983, at *4.

Personal jurisdiction is "a necessary prerequisite to entry of a default judgment." Reilly v. Plot Com., No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting Sheldon v. Plot Com., No. 15 Civ. 5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016)). The Court has personal jurisdiction over Nesama, which is located in this District, as well as El Hattab and Mahmoud, who own and operate Nesama, and each of whom received valid service of the Summons and Complaint. (ECF No. 1 ¶¶ 6–8; see ECF Nos. 5–7; 15 ¶¶ 6–7).

Venue is proper because Nesama is a New York domestic business corporation that operates a location in this District (ECF Nos. 1 ¶ 4; 15 ¶ 6), see 28 U.S.C. 1391(b)(1), and because

a substantial part of the events or omissions giving rise to the claims occurred in this District.  See 28 U.S.C. § 1391(b)(2).

### 2.      Statute of Limitations

Under the NYLL, the statute of limitations is six years.  See NYLL ¶ 198(3).  Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years.  See 29 U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988).  A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited."  McLaughlin, 486 U.S. at 133.  Although a plaintiff may not recover under both the FLSA and the NYLL for the same injury, courts allow a plaintiff to recover under the statute that provides the greatest relief.  Ni v. Bat-Yam Food Servs. Inc., No. 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, Inga incurred damages outside of the FLSA's shorter statute of limitations but within the NYLL's six-year statute of limitations.  (ECF No. 1 ¶¶ 20–27).  Because the NYLL provides for equal or greater relief relative to the FLSA, the Court recommends that Inga be awarded damages under the NYLL.  See Schalaudek v. Chateau 20th St. LLC, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at *5 (S.D.N.Y. Feb. 24, 2017).

### 3.      FLSA and NYLL elements

To establish a claim for wages under the FLSA, a plaintiff must prove that:  (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked hours for which he did not receive minimum or overtime wages.  See Tackie v. Keff Enters., Inc., No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus

14

with interstate commerce or a minimum amount of annual sales." Id. at *2 n.2. The Court analyzes each of these three elements in turn.

a.      **The employment relationship**

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts afford the term employer "an expansive definition with 'striking breadth.'" Mondragon v. Keff, No. 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)). Under the FLSA, "[a]n individual may have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Inga's "employers" for FLSA purposes, the Court examines the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL ¶ 190(3), "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree

15

of control exercised by the purported employer over the results produced or the means used to achieve the results.'"  Mondragon, 2019 WL 2551536, at *7 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  In the absence of a decision from the New York Court of Appeals answering "the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."  Hart, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA."  Martin, 273 F. Supp. 3d at 422.

Inga alleges that Defendants employed him as a cook and porter from 2009 until November 1, 2018.  (ECF Nos. 1 ¶¶ 12–13; 47 ¶¶ 5, 7).  By their default, the Defendants have admitted their status as Inga's employers.  See Rovio Entm't, 97 F. Supp. 3d at 545.  Inga alleges that El Hattab and Mahmoud "jointly exercise control over the terms and conditions of the Restaurant's employees," including hiring and firing, setting rates of pay and schedules, supervising employees' work, and maintaining employment records.  (ECF No. 1 ¶ 9).  Inga also alleges that El Hattab and Mahmoud "are present on the premises of the Restaurant on a daily basis, actively supervise the work of the employees," and approve all decisions concerning the employees.  (Id. ¶ 10; see id. ¶¶ 18–19; ECF No. 47 ¶ 17 ("The individual defendants supervised my work, set my rate of pay and work schedule, directed my work as far as the tasks I was required to perform, provided me with the materials needed to perform my work, and paid my

salary.")).  From these allegations, the Court finds that El Hattab and Mahmoud determined the wages and compensation of employees, including Inga's, established employees' schedules, maintained employee records, and had the authority to hire and fire employees, and that Inga has therefore adequately established that Defendants were his employers.  Perez, 2019 WL 7403983, at *6 (finding that allegations that defendants hired plaintiffs, controlled their schedules, determined their daily tasks, set pay rates, and supervised their work established employer-employee relationship).

Because Defendants were Inga's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in his favor.  See Fermin, 93 F. Supp. 3d at 37 (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established him as employer under the FLSA and the NYLL).

### b.   Interstate commerce

Under the FLSA, Inga must establish that he was, or his employer was, engaged in interstate commerce.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at not less than "one and one-half times the regular rate at which [they are] employed").

Inga alleges that, during the most recent three years, Nesama had sales over $500,000 and was engaged in interstate commerce.  (ECF No. 1 ¶ 11).  This meets the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and therefore, Inga has satisfied the interstate commerce element for FLSA liability.  See Mondragon, 2019 WL 2251536, at *9.

### c.      Unpaid minimum wages

The FLSA and the NYLL require employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week ("Straight Time Wages").  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146.1-2.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage.  See 29 U.S.C. § 218(a).  "[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct."  Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

The New York minimum wage rate during the six-year period for the damages calculation in this action was as follows:

| Date | Min. Wage Rate[1] |
|---|---|
| Dec. 31, 2013 until Dec. 31, 2014 | $8.00 |
| Dec. 31, 2014 until Dec. 31, 2015 | $8.75 |
| Dec. 31, 2015 until Dec. 31, 2016 | $9.00 |
| Dec. 31, 2016 until Dec. 31, 2017 | $10.50 |
| Dec. 31, 2017 until Dec. 31, 2018 (New York City Small Employer) | $12.00[2] |

[1] NYLL § 652.

[2] Inga has not alleged how many employees worked at the Restaurant.  In the absence of such allegations, the Court uses the minimum wage rates for "small employers" under NYLL § 652(1)(a)(ii).  See Anzurez v. La Unica Caridad Inc., No. 20 Civ. 3828 (JMF) (GWG), 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021) (applying small employer minimum wage rate where plaintiff "failed to supply any evidence to support his claim that [defendant restaurant] employed 11 or more employees . . .");  Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *9 (S.D.N.Y. Aug. 27, 2019) (same), adopted by 2019 WL 5722109 (Oct. 7, 2019);  Reyes v. Lincoln Deli Grocery Corp., No. 17 Civ. 2732 (KBF), 2018 WL

Inga alleges that, from February 2014 (the beginning of the six-year limitations period) until August 2018, he was paid $450 per week (ECF Nos. 1 ¶ 26; 47 ¶ 12), or $11.25 per hour (ECF No. 38-4).  That hourly rate is greater than the minimum wage until December 31, 2017, when the minimum wage increased to $12.00 per hour, such that he was paid $0.75 less than minimum wage for the 35-week period December 31, 2017 to August 31, 2018.  From September 2018 until November 1, 2018, Inga was paid $500 per week (ECF Nos. 1 ¶ 27; 47 ¶ 13), or $12.50 per hour (ECF No. 38-4), which is above the requisite minimum wage.[3]

Accordingly, the Court finds that Defendants failed to pay Inga in accordance with the statutory minimum from December 31, 2017 until August 31, 2018, and Inga is therefore entitled to recover Straight Time Wages for the amount by which he was underpaid.  See Agureyev v. H.K. Second Ave. Rest., Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (finding that plaintiffs were entitled to damages for unpaid minimum wages); Lopez, 2020 WL 915821, at *8–9 (same); Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (same).

---

2722455, at *7 (S.D.N.Y. June 5, 2018) (applying small-employer minimum wage rate where "the Complaint [was] completely silent as to" number of employees and "therefore there [was] no evidentiary basis for the Court to calculate damages based on the higher rate"); but see Sanchez v. Jyp Foods Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) (giving "plaintiffs the benefit of the doubt" and applying higher rate plaintiffs requested, despite lacking "information about the number of employees" of defendants) and Lopez, 2020 WL 915821, at *9 n.4 (same).

[3] In the absence of any agreement between Inga and Defendants that his weekly salary would cover the full 60 hours he worked each week, the Court presumes that Inga's $450 and $500 "weekly salaries covered only the first 40 hours per week that he worked."  Reyes v. Café Cousina, 2019 WL 5722475, at *10.

### d.    Unpaid overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  See 29 U.S.C. § 207(a)(1); N.Y. N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  To state an overtime claim, a plaintiff "'must allege only that [he] worked compensable overtime in a workweek longer than forty hours, and that [he was] not properly compensated for that overtime.'"  Agureyev, 2021 WL 847977, at *7 (quoting Tackie, 2014 WL 4626229, at *3).

Inga alleges that "[t]hroughout the entirety of his employment, [he] worked six (6) days per week, and his work schedule consisted of ten (10) hours per day from 7:00 a.m. until 5:00 p.m."  (ECF Nos. 1 ¶ 23; 47 ¶ 10).  Defendants did not pay Inga overtime for the hours he worked in excess of 40 hours per week.  (ECF No. 1 ¶¶ 26–27).  Therefore, Inga has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL.  See Agureyev, 2021 WL 847977, at *7 (holding that plaintiff adequately stated claim for overtime wages); Mondragon, 2019 WL 2551536, at *9 (same).

### e.    Spread-of-hours pay

Under the NYLL, employers must pay a covered employee one extra hour of compensation, at the minimum wage rate, for each day on which he worked more than ten hours.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  Id. § 142-2.18.  Effective January 1, 2011—that is, at all times relevant to the period for which Inga is eligible for damages—"the NYLL was amended such that the spread of hours regulations 'apply to all employees in restaurants . . .

regardless of a given employee's regular rate of pay." <u>Andrade v. 168 First Ave. Rest. Ltd.</u>, No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016), <u>adopted</u> <u>by</u> 2016 WL 3948101 (July 19, 2016).  An employee may recover spread-of-hours wages in addition to federal and state overtime wages.  <u>See</u> <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 339–41 (S.D.N.Y. 2005).

Inga alleges that his "work shift would occasionally exceed ten (10) hours in a single day." (ECF No. 1 ¶ 24).  Inga does not allege, either in the Complaint or his Affidavit, however, when or on how many occasions he worked more than ten hours per day, nor does his Damages Summary or his Affidavit include any amount of claimed spread-of-hours damages.  (ECF Nos. 38-4, 47). Accordingly, the Court finds that Inga has failed to provide a sufficient evidentiary basis to establish a claim for spread-of-hours damages.

### f.    **Statutory wage statements**

The WTPA, effective April 9, 2011, required Defendants to provide Inga, with each payment of wages, a written statement listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked.  NYLL § 195(3); <u>see</u> <u>Agureyev</u>, 2021 WL 847977, at *9.

Here, Inga alleges that Defendants failed to provide him with proper weekly wage statements such that he is entitled to statutory penalties.  (ECF Nos. 1 ¶¶ 2, 28; 47 ¶¶ 6, 14).  The Court finds that Inga has established his claim for entitlement to statutory damages under § 195(3).

*      *      *

Accordingly, for purposes of a default judgment under Rule 55, the Court finds that Inga has demonstrated that the well-pleaded allegations in his Complaint establish Defendants' liability for unpaid minimum wages, unpaid overtime wages, liquidated damages, and statutory damages, but he has not demonstrated a claim for spread-of-hours damages.

### D. <u>Calculating Damages</u>

Here, no party has requested a hearing on the issue of damages, and Defendants have not submitted any written materials.  Therefore, the Court will conduct the inquest based solely on the materials Inga submitted in support of his Motion.  See <u>Cement & Concrete Workers Dist. Council Welfare Fund</u>, 699 F.3d at 234 ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence"); <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure . . . allows but does not require the district judge to conduct a hearing."); <u>Perez</u>, 2019 WL 7403983, at *3; Fed. R. Civ. P. 55(b)(2).

The Court must also determine whether Inga has provided sufficient evidence to support his claim for damages.  <u>Transatlantic Marine</u>, 109 F.3d at 111; <u>Bleecker v. Zetian Sys., Inc.</u>, No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  His submission includes a declaration from his counsel, his individual Affidavit, and documentary evidence.  (<u>See</u> ECF Nos. 38; 38-1 – 38-6; 47).  Despite multiple warnings, Defendants have not responded to the Motion or provided any contrary evidence.  The Court finds that Inga has met his burden and that an in-person hearing is unnecessary because his submission, combined with Defendants' admissions as a result of their default, constitutes a "sufficient basis from which to evaluate the fairness" of his damages request.  <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir.

1989); see Boston Sci. Corp. v. New York Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (same).

### 1.    Straight Time Wages

In his Damages Summary, Inga used the large employer statutory minimum wage, which is incorrect for the reasons set forth above.    The Court uses the small employer rate and recommends that Inga be awarded Straight Time Wages in the following amount:

| Time Period | Straight Time Rate | Unpaid Straight Time Hours | Straight Time Wages Owed |
|---|---|---|---|
| 2/1/2014 – 12/31/2017 | $11.25 | 0 | $0 |
| 1/1/2018 – 8/31/2018 | $11.25 | 40 hours * 35 weeks | $1050.00[4] |
| 9/1/2018 – 11/1/2018 | $12.50 | 0 | $ 0 |
| Total | | | $1,050.00 |

### 2.    Overtime

The Court calculates appropriate overtime wages "by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half," then by multiplying that rate "by the number of hours in excess of forty hours the employee worked each week."  Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015).

Having reviewed Inga's Damages Summary, the Court disagrees with Inga's calculations and instead recommends that Inga be awarded overtime damages in the amounts below.

---

[4] The calculation is 40*35*$0.75.

| Time Period | Overtime Rate | Unpaid Overtime Hours | Overtime Wages Owed |
|---|---|---|---|
| 2/1/2014 – 12/31/2017 | $16.88[5] | 20 hours * 204 weeks | $68,870.40[6] |
| 1/1/2018 – 8/31/2018 | $18.00[7] | 20 hours * 35 weeks | $12,600.00[8] |
| 9/1/2018 – 11/1/2018 | $18.75[9] | 20 hours * 9 weeks | $3,375.00[10] |
| Total | | | $ 84,845.40 |

### 3.    Liquidated damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'" Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C. § 216(b)), adopted by 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260).  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172

---

[5] The overtime rate is $11.25 * 1.5.

[6] Inga's Damages Summary calculates this amount as $68,850, a difference of $20.40 from the Court's calculation, a difference that may be due to rounding.

[7] The overtime rate is $12.00 * 1.5.

[8] The calculation is $18 * 20 *35.  Inga calculates the overtime rate of $19.50 using the large employer Straight Time Wage for a total of $13,650.  For the reasons set forth above, the Court uses the small employer Straight Time Rate.

[9] The overtime rate is $12.50 * 1.5.

[10] The calculation is $18.75 * 20 * 9.  Inga calculates the overtime rate of $19.50 using the large employer Straight Time Wage for a total of $3,510.  For the reasons set forth above, the Court uses the small employer Straight Time Rate.

F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." Guaman v. J & C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'"  Kernes v. Glob. Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  "Courts deem defendants' actions willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7).  Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages.  NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  A plaintiff should recover "under the statute that

provides the greatest relief." Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted).  The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not.  See Valdez v. H & S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016). The NYLL therefore provides greater relief.  See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see Mondragon, 2019 WL 2551536, at *11, and therefore, Inga is entitled to liquidated damages equivalent to 100% of his unpaid wages set forth above.  See Schalaudek, 2017 WL 729544, at *10 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted).

Liquidated damages are calculated as the sum of the Straight Time Wages and Overtime Wages awarded to Inga.  See NYLL § 198(1-a).  The Court respectfully recommends that Inga be awarded liquidated damages in the amount below.

| Straight Time Wages Owed | Overtime Wages Owed | Liquidated Damages |
|---|---|---|
| $1,050.00 | $84,845.40 | $85,895.40 |

### 4.   Statutory Damages

As of February 27, 2015, violations of § 195(3) for failure to provide weekly wage statements result in damages of $250 per workday, up to a maximum of $5,000.  NYLL § 198(1-d).

Here, Defendants failed to provide Inga with proper weekly wage statements, such that he is entitled to statutory penalties. (ECF No. 1 ¶ 64). The Court recommends that Inga recover statutory damages in the amount of $5,000.

5. **Prejudgment interest**

Inga seeks an award of prejudgment interest on his compensatory damages under the NYLL. (ECF No. 1 at 14). Although prejudgment interest is not awarded where FLSA liquidated damages are awarded, "prejudgment interest is still appropriate where a plaintiff is awarded liquidated damages under the NYLL." Morales v. Mw Bronx, Inc., No. 15 Civ. 6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012), adopted by, Order dated Aug. 9, 2012 (ECF No. 20).

Under New York law, interest is awarded at the rate of nine percent per year. N.Y.C.P.L.R. § 5004. For damages accruing "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y.C.P.L.R. § 5001. "Simple prejudgment interest is calculated from a singular, midpoint date . . . [and] by multiplying the principal by the interest rate by the time period—from a singular, midpoint date—up until and including the date judgment is entered." Maldonado, 2012 WL 1663941, at *11. To determine the appropriate midpoint date, courts identify "'the median date between the earliest ascertainable date the cause of action existed and the date the action was filed [or the last date the cause of action existed].'" Yuquilema v. Manhattan's Hero Corp., No. 13

Civ. 461 (WHP) (JLC), 2014 WL 4207106, at *12 (S.D.N.Y. Aug. 26, 2014) (quoting <u>Gunawan</u>, 897 F. Supp. 2d at 93).

As set forth above, I recommend that Inga be awarded liquidated damages under the NYLL, and therefore, prejudgment interest is still appropriate, calculated from the midpoint of the period for which Inga is recovering damages, July 6, 2017, through January 7, 2021, the date the Inga filed the Motion, in the amount below.  <u>See Reyes v. Café Cousina</u>, 2019 WL 5722475, at *13 (using date of plaintiff's damages submission as the end point for calculating pre-judgment interest).

| Principal[11] | Interest Calculation | Interest Amount |
|---|---|---|
| $85,895.40 | 3.51 years[12] * $85,895.40 * .09 | $27,134.36 |

### 6.    Post-judgment interest

Inga also seeks post-judgment interest.  (ECF No. 1 at 14).  The applicable federal statute, 28 U.S.C. § 1961, provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."  28 U.S.C. § 1961.  The Second Circuit has explained that an award of post-judgment interest is mandatory.  <u>See Schipani v. McLeod</u>, 541 F.3d 158, 165 (2d Cir. 2008); <u>see Xochimitl</u>, 2016 WL 4704917, at *19 (awarding post-judgment interest in employment action under FLSA

---

[11] The principal amount on which pre-judgment interest can be awarded is the sum of the unpaid Straight Time Wages and Overtime Wages.  <u>See Reyes v. Café Cousina</u>, 2019 WL 5722475, at *13.

[12] The period from January 1, 2014 to January 7, 2021 is 2563 days, with a mid-point at 1282 days, or 3.51 years (1283/365), which is July 6, 2017.

and NYLL).  Given the mandatory nature of post-judgment interest, I respectfully recommend that Inga be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### E.  **Attorneys' Fees and Costs**

Inga requests an award of $12,600 for attorneys' fees and $577.25 in costs.  (ECF No. 38 ¶¶ 39–41).  Both the FLSA and the NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  29 U.S.C. § 216(b); NYLL §§ 198, 663.  To determine a "presumptively reasonable fee," the Court first determines the "lodestar," which is "the product of the attorney's usual hourly rate and the number of hours worked."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008).  The Court then adjusts the lodestar by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

### 1.  **Reasonable hourly rate**

Inga asks that his counsel, Justin Cilenti, Esq. ("Cilenti") and two paralegals be compensated at hourly rates of $400 and $100, respectively.  (ECF No. 38-5).  Cilenti "has almost twenty-hour (24) years of experience in civil litigation . . . ," and his firm has "handled over 1,000 wage and hour cases over the past approximately eleven (11) years."  (ECF No. 38 ¶ 39).

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill."  Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d

306, 323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court

may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions;
> [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of
> employment by the attorney due to acceptance of the case; [v] the customary fee;
> [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the
> client or the circumstances; [viii] the amount involved and the results obtained;
> [ix] the experience, reputation, and ability of the attorneys; [x] the 'undesirability'
> of the case; [xi] the nature and length of the professional relationship with the
> client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley, 461 U.S.

at 430 n.3).

In this district, courts generally award experienced wage-and-hour attorneys between

$300 and $400 per hour.  See Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2018 WL

1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more

decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL

5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced

litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ.

05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead

attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-

wage-and-hour experience).

Other district courts in the Second Circuit have recently approved an hourly rate of $400

for Cilenti.  See Tendilla v. 1465 Espresso Bar LLC, No. 18 Civ. 5991 (AJN), 2021 WL 2209873, at

*3 (S.D.N.Y. June 1, 2021); Garcia v. SBKU Servs. Inc., No. 17 Civ. 3130 (JMA) (ARL), 2021 WL

1394480, at *2 (E.D.N.Y. Feb. 25, 2021); Mahuiztl-Atilano v. Pio Rest., LLC, No. 18 Civ. 3689 (AJN),

2020 WL 6820749, at *5 (S.D.N.Y. Nov. 20, 2020). The Court agrees and concludes that the $400 hourly rate for Cilenti is reasonable.

In addition, two paralegals worked on this matter at an hourly rate of $100. (ECF No. 38-5). Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District. See Tendilla, 2021 WL 2209873, at *3 (finding that $100 was reasonable rate for Cilenti's paralegal); Williams v. Metro-North R.R. Co., No. 17 Civ. 3847 (JGK) (KHP), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018) (finding that $150 was reasonable rate for paralegals), adopted by 2018 WL 3368713 (July 10, 2018); Tatum v. City of New York, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (finding that $125 was reasonable rate for paralegals). Accordingly, the Court finds that the requested rate of $100 is reasonable.

### 2.      Reasonable hours expended

Inga has provided the court with contemporaneous billing records of his counsel, including hours expended, dates of work, and brief descriptions of the tasks performed. (ECF Nos. 38-5). Cilenti expended 30.7 hours, and two paralegals together expended 2.1 hours. (Id. at 3–5).

To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours

accordingly." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434); see LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 281 (S.D.N.Y. 2019) ("A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees."); Tatum, 2010 WL 334975, at *6 (a court will exclude hours that were not "reasonably expended" (quoting Hensley, 461 U.S. at 434)).

Courts are alert for several categories of potentially unreasonable hours billed. First, "[p]laintiffs cannot recover for time spent by attorneys completing administrative tasks." Chiangxing Li v. Kai Xiang Dong, No. 15 Civ. 7554 (GBD) (AJP), 2017 WL 892611, at *20 (S.D.N.Y. Mar. 7, 2017) (collecting cases). Second, a court "may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did." Id. (collecting cases in which courts reduced fees for overly vague or duplicative entries). Third, courts may reduce fees "where the hours billed are disproportionate to the quantity or quality of the attorneys' work." Id. at *21 (collecting cases in which courts reduced fees where attorneys' work was mediocre or did not reflect complicated analysis).

To bring the hours expended into a reasonable range, "[c]ourts in this District have applied percentage reductions of up to fifty percent." Williams, 2018 WL 3370678, at *12; see, e.g., Alicea v. City of New York, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017) (applying 50% reduction for excessive and unjustified billing); Auto. Club of N.Y., Inc. v. Dykstra, No. 04 Civ. 2576 (SHS), 2010 WL 3529235, at *3–4 (S.D.N.Y. Aug. 24, 2010) (applying 10% across-the-board reduction in hours to address three types of unjustified time). The number of hours expended in this case, just over 30 hours, for a case that involved Defendants' default and only one in-person court

conference, appears reasonable for a single-plaintiff case in which the Defendants have defaulted.  See Rodriguez v. Heinchon Marcus Distrib., LLC, 16 Civ. 1447 (VB) (PED), 2016 WL 7489067 at *9 (S.D.N.Y. Nov. 10, 2016), adopted by 2016 WL 7477559 (S.D.N.Y. Dec. 28, 2016) (finding 39.4 billable hours reasonable in a FLSA default judgment case); cf. Estrada v. Giovanni's Italian Pizzeria, Inc., No. 16 Civ. 6162 (PGG) (GWG), 2020 WL 3166964, at *8 (S.D.N.Y. June 15, 2020) (finding 35.6 hours "on the high end of expected hours" for a default FLSA case).

Accordingly, the Court does not recommend any reduction to the hours expended, and recommends an award of attorneys' fees in the total amount of $12,490.00, calculated as follows:

| Timekeeper | Requested Rate | Approved Rate | Requested Hours | Approved Total |
|---|---|---|---|---|
| Cilenti | $400 | $400 | 30.7 | $12,280.00 |
| Paralegal 1 | $100 | $100 | 1.5 | $150.00 |
| Paralegal 2 | $100 | $100 | 0.6 | $60.00 |
| Total | | | | $12,490.00 |

### 3.    Costs

Under the FLSA, NYLL and WTPA, Inga may also recover his reasonable costs in this action. See 29 U.S.C. § 216(b); NYLL §§ 663(1), 198(1-d).  Inga seeks an award of $577.25 in costs for the filing, service of process fee, and photocopying and mailing costs incurred in this action.  (ECF Nos. 38 ¶ 41; 38-5 at 5).  Inga has not substantiated these costs with contemporaneous documentation showing that his counsel paid the amounts for which he now seeks reimbursement.  See Sanchez, 2018 WL 4502008, at *17 (noting that adequate substantiation is required for an award of costs); Raymond James & Assocs., Inc. v. Vanguard Funding, LLC, No. 17

Civ. 3327 (VSB) (SDA), 2018 WL 8758763, at *6 (S.D.N.Y. Apr. 16, 2018) (awarding documented expenses for, inter alia, filing and service of process fees); J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp., No. 17 Civ. 5355 (JGK) (DF), 2018 WL 5018065, at *7 (S.D.N.Y. Sept. 20, 2018) (recommending denial of request for service fees that lacked documentary support).  The Court may, however, take judicial notice of the filing fees reflected on the docket as a support for an award of those costs.  See Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *6 (S.D.N.Y. Jan. 13, 2019) (taking judicial notice of $400 filing fee and awarding costs in that amount); BWP Media USA, Inc. v. Uropa Media, Inc., No. 13 Civ. 7871 (JSR) (JCF), 2014 WL 2011775, at *4 (S.D.N.Y. May 16, 2014) (same).  Accordingly, the Court recommends that Inga be awarded costs in the amount of $400.

## V. CONCLUSION

For the reasons set forth above, I respectfully recommend that:

(1)  The Motion be GRANTED;

(2)  Defendants' Answer be STRICKEN;

(3)  The Clerk of the Court enter Certificates of Default against Defendants;

(4)  Default judgment be entered in favor of Inga and against Defendants in the following

amounts:

| Straight Time Wages | Overtime Wages | Liquidated Damages | Statutory Damages | Pre-Judgment Interest | Total |
|---|---|---|---|---|---|
| $1,050.00 | $84,895.40 | $85,895.40 | $5,000 | $27,134.36 | $203,925.16 |

(5) Inga be awarded post-judgment interest pursuant to 28 U.S.C. § 1961; and

(6) Inga be awarded attorneys' fees in the amount of $12,490.00 and costs in the

amount of $400.

Dated:        New York, New York
              July 30, 2021

SARAH L. CAVE
United States Magistrate Judge

\*                    \*                    \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Carter.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).